UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

LARRY CRAWFORD, CRAIG CRAWFORD, )
SEAN CRAWFORD, GERALD COFER, )
MIKE WILSON, JAMES SWINDOLL, AND )
THEIR DEPENDANTS )
)
        Plaintiffs, )
)    No. 1:07-CV-228
v. )
)    Chief Judge Curtis L. Collier
THE TRUSTEES OF THE PLUMBERS AND )
STEAMFITTERS LOCAL UNION NO. 43 )
HEALTH AND WELFARE FUND, THE )
TRUSTEES OF THE PLUMBERS AND )
STEAMFITTERS LOCAL UNION NO. 43 )
PENSION FUND, THE PLUMBERS AND )
STEAMFITTERS LOCAL UNION NO. 43 )
HEALTH AND WELFARE FUND, AND )
STEAMFITTERS LOCAL UNION NO. 43, )
PENSION FUND )
)
        Defendants. )

## <u>MEMORANDUM & ORDER</u>

Before the Court is Plaintiffs Larry Crawford, Mike Wilson, and James Swindoll, and their

dependants' ("Plaintiffs")[1] motion for a temporary restraining order ("TRO") (Court File No. 2) and

memorandum in support (Court File No. 3). Plaintiffs and Defendants Trustees of the Plumbers and

Steamfitters Local Union No. 43 Health and Welfare Fund, the Trustees of the Plumbers and

Steamfitters Local Union No. 43 Pension Fund, the Plumbers and Steamfitters Local Union No. 43

Health and Welfare Fund, and Steamfitters Local Union No. 43 Pension Fund ("Defendants")

presented oral arguments to the Court on September 28, 2007. At the conclusion of the hearing, the

---

[1]Craig Crawford, Sean Crawford, Gerald Cofer, and their dependants are also plaintiffs in
this case, but they are not before the Court with regards to this motion, as is explained below.

Court provisionally ordered a temporary restraining order[2] to last until October 1, 2007, and ordered the parties to file memorandums by that date (Court File Nos. 4 & 5). After considering the parties' arguments and the available facts, the Court **DENIES** Plaintiffs' motion for a temporary restraining order (Court File No. 2).

## I.  RELEVANT FACTS AND PROCEDURAL HISTORY

This case relates to another case before the Court, *Trustees v. Larry Crawford,* 1:06-cv-245, in which the Trustees (Defendants in the instant action) allege Larry Crawford, doing business individually and as Crawford Plumbing and various other names, violated a Collective Bargaining Agreement ("CBA") requiring Crawford to contribute money on his employees' behalf to a health and welfare fund ("Fund") managed by Trustees (1:06-cv-245 Court File No. 1).[3] Trustees alleges Crawford is deficient in his contributions (Court File No. 3, p. 2). Crawford contends he was never part of the CBA but the Trustees accepted contributions on behalf of Crawford and his employees to obtain group health insurance (*id*.). Trustees contend Crawford was bound by the CBA and withdrew from it during the course of litigating the first case (Court File No. 5, p. 4). As a result, Trustees no longer accepted contributions from Crawford for himself or his employees, and therefore medical benefits ended September 30, 2007.

_____

[2]During the oral argument, Defendants made reference to various documents the Court needed to review and digest before it could issue a decision. Considering the time constraints under which the Court operated, it decided to maintain the status quo through the weekend until the close of business on the next business day. This had the effect of granting Plaintiffs' request for one day.

[3]All other citations are to the court file for the instant case.

2

On September 27, 2007, Plaintiffs filed this case against Defendants (Court File No. 1).[4] Plaintiffs brought this action under ERISA, seeking to enforce the Trust Agreement (Court File No. 1, Exh. A), which controls the Fund. Plaintiffs simultaneously filed a motion for a TRO (Court File No. 2) to prohibit Defendants from terminating them from the Fund and denying them health insurance. Plaintiffs contend they are entitled to health benefits from the Fund because they made all required contributions to the Fund through their employer, Crawford Plumbing. However, on July 24, 2007, David L. Tolley of the Trustees informed Plaintiffs the Fund would no longer accept contributions on behalf of Plaintiffs because Crawford was no longer part of the CBA (Court File No. 1, Exh. B). Specifically, the letter states that during the deposition of Larry Crawford, "it was confirmed that Crawford Plumbing was no longer part of the bargaining agreement" and therefore the Fund can no longer accept payment on Plaintiffs' behalf (*id*.).

Crawford insists he was never part of the CBA and Defendants have accepted contributions to the Fund on behalf of him and his employees for decades (Court File No. 2, Exh. A). Plaintiffs therefore assert they are participants in the Fund, but the Fund rejected their July contribution checks, mailed to the Fund through Crawford. Plaintiffs contend that under 29 U.S.C. § 1132(a)(1)(B), they are entitled to make contributions to the Fund and receive benefits.[5]

Defendants assert Crawford was always bound by the CBA and has submitted certified statements for decades indicating so. Defendants say Crawford withdrew, so the Fund stopped

---

[4]The complaint deals with both a health and welfare fund and a pension fund. However, the TRO concerns only the health and welfare fund.

[5]Plaintiffs state two causes of action, both under 29 U.S.C. § 1132(a)(1)(B). The first is to enforce their rights under the terms of the plan and the second is to clarify their future rights to enforce the terms of the plan.

accepting his contributions (Court File No. 5, p. 4). At oral argument, Defendants represented that health insurance for three of the plaintiffs in this case, Craig Crawford, Mike Wilson, and James Swindoll, does not expire until the end of October; Plaintiffs do not appear to dispute this and so those three plaintiffs will not be considered in evaluating Plaintiffs' motion.

## II.    DISCUSSION

The authority to issue a temporary restraining order is found in Fed R. Civ. P. 65(b). The Court must consider and balance the four factors necessary for issuing a preliminary injunction:

(1) whether the movant has a "strong" likelihood of success on the merits;
(2) whether the movant would otherwise suffer irreparable injury;
(3) whether a preliminary injunction would cause substantial harm to others; and
(4) whether the public interest would be served by the issuance of a preliminary
   injunction.

*McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc). These factors should be balanced. *Ingram v. Toledo City Sch. Dist. Bd. of Educ.*, 339 F. Supp. 2d 998 (N.D. Ohio 2004) (citing *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537-38 (6th Cir. 1978)). Plaintiff, by a clear showing, carries the burden of persuasion. *Garlock, Inc. v. United Seal Inc.*, 404 F.2d 256, 257 (6th Cir. 1968).

### A.    Strong likelihood of success on the merits

The parties agree the Trust Agreement ("Trust Agreement," Court File No. 1, Exh. A) governs this action, but disagree what the Trust Agreement means. Plaintiffs contend they are employees under the Trust Agreement and cannot be dropped from the Fund. They base this argument on one definition of "Employee" as "Any other person, or classification of persons, not covered under a collective bargaining agreement between the employer and union as may be

accepted by the trustees and for which contributions are received at the rate set forth in Section 3(b)" (Trust Agreement, Art. I, Section 2(b)). Plaintiffs assert they are employees under that definition because there is no CBA between Crawford and Defendants, yet Defendants accept them and receive contributions from them.

Plaintiffs note the Trust Agreement provides that the Fund is an "irrevocable trust" created for "the benefit of the employees," specifically "for employees of the employers or their eligible dependents, as decided by the trustees" (Art. II, Sections 1 & 2). Plaintiffs contend Crawford is an "Employer," which is defined as "any person, firm association, union, trust, partnership, or corporation employing an employee working under the 'jurisdiction of the Unions' and contributing into the Welfare Fund, for said 'Employees'" (Art. I, Section 1). Because Crawford is an employer and Plaintiffs are employees, Plaintiffs argue the irrevocable trust prevents Defendants from terminating Plaintiffs from the Fund.

Defendants contend there must be an employer bound by the CBA for any employees to be part of the Fund. Defendants insist the definition must be read in the context of the entire Trust Agreement, which Defendants have in good faith interpreted to allow nonunion employees like secretaries and office workers to participate in the Fund.

### 1. Standards of review

The Trust Agreement provides, "The trustees shall have the power to interpret the provisions of this Agreement and Declaration of Trust and the terms used herein and any interpretation adopted by the trustees in good faith shall be binding upon the Unions, the Employers, and the Employees and their eligible dependents, beneficiaries and/or legal representatives" (Trust Agreement, Art. Section 2). Because the Trust Agreement gives Defendants' discretion, the Court will analyze

Defendants' decision to reject Plaintiffs under the arbitrary and capricious standard of review. *Williams v. International Paper Co.*, 227 F.3d 706, 711 (6th Cir. 2000) (citing *Firestone v. Bruch*, 489 U.S. 101, 110-112 (1989)). At oral argument, Plaintiffs' counsel acknowledged the appropriateness of the arbitrary and capricious standard and contended Plaintiffs were rejected from the Fund arbitrarily.

The United States Court of Appeals for the Sixth Circuit has described the arbitrary and capricious standard as "the least demanding form of judicial review of administrative action." *Williams*, 227 F.3d at 711. "When applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was rational in light of the plan's provisions. Stated differently, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.* (internal citations and quotations omitted).

In construing the Trust Agreement, the Court will look to general rules of contract interpretation. *See Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 953 (6th Cir. 2004) (unpublished). "When interpreting ERISA plan provisions, general principles of contract law dictate that we interpret the provisions according to their plain meaning in an ordinary and popular sense. In applying the 'plain meaning' analysis, we must give effect to the unambiguous terms of an ERISA plan." *Williams v. International Paper Co.*, 227 F.3d 706, 711 (6th Cir. 2000) (internal citations and quotations omitted). The terms of a contract should "be interpreted as part of an integrated whole." *Musto v. American General Corp.*, 861 F.2d 897, 906 (6th Cir. 1988).

## 2. Analysis

6

Based on the facts available to the Court and the parties' arguments, Plaintiffs' prospects for success on the merits appear weak. Defendants' interpretation of the Trust Agreement appears rational. The Trust Agreement is based on the existence of a CBA between Defendants and an employer, in this case Larry Crawford. In Art. I, Sections 3(a) and 3(d) and Art. V, Section 1, the Trust Agreement defines contributions based on rates provided in "the collective bargaining agreement," indicating such an agreement must exist. Likewise, Art. X, Section 1 prohibits amendments that "conflict with the collective bargaining agreement."

In addition, Art. XII, Section 1 provides for the termination of employers who are "no longer obligated, pursuant to an Agreement with the Union to make contributions to this Welfare Fund, or, as determined by the trustees, when he is delinquent in his contributions or reports to the Welfare Fund." The plain meaning of these provisions is that there must be a CBA between an employer and Defendants.

Plaintiffs' contention that Larry Crawford is an employer within the Trust Agreement's definition seems contradictory to the requirement that the employer employ people "working under the 'jurisdiction of the Unions,'" that is places "covered by collective bargaining agreements maintained with the employers" (Trust Agreement, Art. II, Section 1). If this language about "working under the 'jurisdiction of the Unions'" meant a geographic jurisdiction, the word "within" would have been used; use of the word "under" denotes more than geography; it denotes a relationship, specifically one based on a CBA between the employer and Defendants.

The Trust Agreement allows for the termination of employers when they withdraw from the CBA. It is undisputed that to the extent Crawford was ever bound by the CBA, he withdrew from it during the litigation of the first case (Court File No. 4, p. 8; Court File No. 5, p. 4). Regardless

of whether Larry Crawford was never bound by the CBA or recently withdrew from it, he is not now an employer within the meaning of the Trust Agreement. Plaintiffs argue that nevertheless they are employees within the meaning of the Trust Agreement.

However, Plaintiffs' interpretation of the definition of employee is not likely to succeed. Under their definition, any person even lacking any relationship to the union could be covered by the Fund. It does not make sense that Defendants would have two categories of people partake in their Fund: people whose employer are bound by a CBA and people whose employer are not bound by a CBA.[6] Why would the union accept people without any relationship to it? Defendants' interpretation of the definition of employee is more reasonable, in that it allows nonunion employees like secretaries to be included based on their employer's CBA but does not allow random people to be part of Defendants' Fund.

Larry Crawford may sincerely believe he has never been bound by the CBA. There is an apparent factual dispute over whether he signed the CBA in 1992. Regardless of whether he did, his actions could lead a reasonable person to honestly think he was bound by the CBA in that, according to Defendants, he contributed to the Fund for many years and those contributions were accompanied by certifications he was bound by the CBA. Given his clear and unequivocal withdrawal from the CBA, and reading the Trust Agreement based on the principles of contract construction, it appears reasonable for Defendants to have terminated him and his employees from the Fund. There is no indication such action was arbitrary and capricious. Even if Defendants are

---

[6]Plaintiffs argued at the hearing there were union members that worked for employers not party to a CBA. However, such union members would have no way to have their premiums paid under the provisions of the Trust Agreement. Such contributions must be tendered by an employer as defined in the Trust Agreement. That limits employers to those party to a CBA. This argument by Plaintiffs is unavailing.

incorrect in their interpretation, their interpretation is not unreasonable. Accordingly, the Court concludes Plaintiffs do not have a strong likelihood of success on the merits and this factor weighs heavily against Plaintiffs.

### B. Irreparable injury

Plaintiffs assert the cancellation of their medical insurance is irreparable injury. In an unpublished case, the Sixth Circuit found there was no clear error in a district court's determination that "plaintiffs would suffer irreparable harm as a result of the increased insurance costs and the consequent risk of having to forgo medical treatment." *Fox v. Varity Corp.*, No. 95-1730, 1996 U.S. App. LEXIS 19150, *6, 1996 WL 382272, *2 (6th Cir. July 5, 1996). *See also Teamsters Local No. 120 v. Marathon Petroleum Co. LLC*, Civ. No. 06-3431, 2006 U.S. Dist. LEXIS 61933, *16 (D. Minn. Aug. 29, 2006) ("the termination of health insurance benefits of individuals on fixed incomes presents a sufficient threat of irreparable harm to warrant injunctive relief").

None of the three plaintiffs at issue for this TRO has any ongoing medical issues, although one of the plaintiffs and his wife are over 60 years old. Nevertheless, for any employee, regardless of age or current medical conditions, having a medical emergency while lacking health insurance would be harmful.

That harm is mitigated because the three plaintiffs have submitted a payment and application for health insurance under COBRA, to be used only if the Court denies their motion for a TRO (Court File No. 4, pp. 2-3).[7] Such health insurance is more expensive than Plaintiffs would receive

---

[7]"COBRA provides certain former employees, retirees, spouses, former spouses, and dependent children the right to temporary continuation of health coverage at group rates." U.S. Department of Labor, Employee Benefits Security Administration, "FAQs About COBRA Continuation Health Coverage," http://www.dol.gov/ebsa/faqs/faq_consumer_cobra.html.

from the Fund (*id.*, p. 13). The denial of health insurance weighs in favor of Plaintiffs but the availability of an alternative and the lack of ongoing medical issues lessen that weight.

### C. Substantial harm to others

Plaintiffs contend Defendants will suffer little or no harm from a TRO because Defendants will merely be spending money paid by Plaintiffs for Plaintiffs' health care. Defendants' memorandum does not counter Plaintiff's contention but at oral argument Defendants stated rightful beneficiaries of the Fund will be harmed if contributions are given to parties not entitled to receive them. Because payments from the Fund are spread out over a group of people, any costs from including Plaintiffs would likely be minimized, so this factor weighs in favor of Plaintiffs.

### D. Public interest

ERISA is intended to ensure people's rights to benefits plans. The statute provides that ERISA's policy is to "protect the interests of participants in employee benefit plans . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, . . . by providing for appropriate remedies, sanctions and ready access to the Federal Court." *Schalk v. Teledyne, Inc.*, 751 F. Supp. 1261, 1268 (W.D. Mich. 1990) (citing 29 U.S.C. § 1001(b)). This factor is related to success on the merits. The public interest is served by the provisions of benefit plans being followed. To the extent Plaitniffs are not entitled to the benefits, this factor weighs in favor of Defendants. To the extent they are entitled to benefits, this factor weighs in favor of Plaintiffs.


## III.    CONCLUSION

Having balanced the factors, and especially considering Plaintiffs' inability to show a strong likelihood of success on the merits weighs, the Court **DENIES** Plaintiff's motion for a temporary restraining order (Court File No. 2).

**SO ORDERED.**

**ENTER:**

**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**